*Zeeshan v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of October, two thousand twenty-four.

PRESENT:
>
> MICHAEL H. PARK,
> EUNICE C. LEE,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

MUHAMMAD ZEESHAN,
>
> *Petitioner*,

v.                                                            23-6834

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
>
> *Respondent.*

_____

FOR PETITIONER:                    Dilli Raj Bhatta, Bhatta Law & Associates,
                                                New York, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General, M. Jocelyn Lopez Wright, Senior Litigation Counsel, and Jennifer P. Williams, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Muhammad Zeeshan, a native and citizen of Pakistan, seeks review of a decision from the BIA affirming a decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Zeeshan*, No. A 212-990-009 (B.I.A. July 10, 2023), *aff'g* No. A 212-990-009 (Immigr. Ct. N.Y.C. Aug. 4, 2020). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec. Immigr. & Customs Enf't*, 448 F.3d 524, 528 (2d Cir. 2006). Because the BIA agrees with the IJ's conclusions, emphasizes some of the IJ's reasoning, and does not reject any findings, our review includes aspects of the IJ's decision not explicitly discussed by the BIA. *See Guan*

2

*v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law—and the application of law to fact—de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (citation omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An asylum applicant bears the burden of proof. 8 U.S.C. § 1158(b)(1)(B)(i). "The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) (explaining that the agency may find testimony credible but "still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it does not include specific facts sufficient to demonstrate that the applicant is a refugee" (cleaned up)). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the

3

applicant does not have the evidence and cannot reasonably obtain the evidence."

8 U.S.C. § 1158(b)(1)(B)(ii); *see also Smakaj v. Garland*, No. 22-6180, 2024 WL 4023815, at *1 (2d Cir. Sept. 3, 2024).

Here, the agency did not err in concluding that significant inconsistencies rendered unpersuasive Zeeshan's testimony as to his relationship with a woman in Pakistan and the beatings and threats he received from her family.[1] *First*, Zeeshan testified that his relationship consisted of telephone calls and that he did not spend time with her in person. His written statement noted, however, that the woman and he spent a night together at a hotel. Zeeshan argues that any such inconsistency was minor, that the question about whether they ever spent time together in person was ambiguous, and that the IJ should have given him an opportunity to clarify. But the relationship was a central element of his persecution claim. The question was straightforward and posed by his attorney on direct examination. And the agency can rely on obvious inconsistencies

---

[1] The IJ concluded that Zeeshan was "credible, but not persuasive." CAR at 000084. Yet the IJ's analysis focused on issues more properly going to credibility, not persuasiveness, such as inconsistencies between his testimony and documentary evidence and his lack of candor and responsiveness while testifying. Regardless of the terminology, the IJ's holding sufficiently supports a conclusion that Zeeshan did not meet his burden for a grant of asylum.

without asking for an explanation. *See Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir. 2005) ("Nor have we ever required that an IJ, when faced with inconsistent testimony of an asylum applicant, must always bring any apparent inconsistencies to the applicant's attention and actively solicit an explanation.").

*Second*, Zeeshan wrote and testified that he did not report the assaults because the woman's father ran the local police department. But when asked why medical records indicated that police took him *to* the hospital and his clothes and medical reports *from* the hospital, Zeeshan claimed that officers, perhaps sent by the woman's father, met him outside the hospital and escorted him inside—all without speaking and all in an effort to stop him from filing a report. Even if that were the case, the IJ reasonably found his testimony unpersuasive. If the police accompanied him and confiscated evidence, Zeeshan should have mentioned that in his written statement and direct testimony. And if the officers did not talk to him, it remains unclear how he knew that they were there to prevent him from filing a report. *See Hong Fei Gao*, 891 F.3d at 78 (explaining that the probative value of an omission "depends on whether [the omitted] facts are ones the witness would reasonably have been expected to disclose").[2]

---

[2] Zeeshan argues that the agency failed to account for his limited education and

5

Nor did the agency err in giving little weight to Zeeshan's corroborating evidence. *See Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence." (citation omitted)). Zeeshan submitted supporting affidavits from his father and a friend. But his father is an interested party, and neither his father nor his friend was available for cross-examination or mentioned the alleged assaults. *See Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (noting that the IJ "acted within her discretion" in according "little weight" to letters from "interested parties" unavailable for cross-examination). Zeeshan also submitted medical records and documents obtained from Pakistan. But the former was inconsistent with his testimony and the latter lacked mailing envelopes. *See In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 214 n.5 (B.I.A. 2010) (noting that the "failure to attempt to prove the authenticity of a document . . . is significant"), *overruled on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130, 133–38 (2d Cir. 2012). And even

---

lack of sophistication. But there is no indication that such factors hindered his ability to describe his experiences. And we presume that the agency "has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006).

when given full weight, none of Zeeshan's documents corroborates his persecution claim.

On this record, the agency did not err in concluding that Zeeshan failed to provide reasonably available corroboration. And where the IJ has identified the missing evidence, we may reverse its decision only if "a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4); *see Yan Juan Chen v. Holder*, 658 F.3d 246, 252 (2d Cir. 2011). That is not the case here.

Zeeshan argues otherwise. He claims, for instance, that he should not have been expected to provide a statement from his mother—not because it was unavailable, but because it would have been redundant. But the IJ explained why that was not so: Zeeshan's father made no mention of any assaults, and Zeeshan testified that his mother—who took him to the hospital for medical treatment—had told his father about the assaults.[3] Zeeshan also maintains that evidence related to the woman's family's stature was not reasonably available because the family is prominent only *locally* and because the people who wrote letters to

---

[3] Zeeshan's assertion that his mother did not witness the assaults conflicts with his written statement. And while his testimony on this point was confusing, it confirmed that his mother became aware of an assault as it was happening.

7

support his application should not have been expected to know that such information was important. But Zeeshan fails to show that those who wrote—or were available to write—supporting letters were unaware of the family's position. In fact, he testified that *everyone* in his area knew such information. That evidence was important, given his claims that the family could use its power to carry out its threats with impunity. And the burden to introduce it was his, "without prompting from the IJ." *Wei Sun v. Sessions*, 883 F.3d 23, 31 (2d Cir. 2018) (cleaned up).

In sum, Zeeshan's testimony proves unpersuasive. Given the deficiencies in his evidence and his failure to present reasonably available corroboration for significant aspects of his claim, the agency did not err in concluding that he failed to satisfy his burden for asylum. *See Pinel-Gomez*, 52 F.4th at 529–30; *Yan Juan Chen*, 658 F.3d at 252. Having failed to meet that burden, he "necessarily" failed to satisfy the higher showings required for withholding of removal or CAT relief. *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010); *see also Hong Fei Gao*, 891 F.3d at 76. And because he fails to argue that the agency's additional grounds for denying CAT relief contained errors, he abandons any such claim. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not

8

adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (cleaned up)).

For the foregoing reasons, the petition for review is **DENIED**.  Any pending motions for a stay of removal in this petition are **DISMISSED** as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9